IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMIE L. GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | 8:15CV207 |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | MEMORANDUM AND ORDER |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Jamie Gaines claims in this Social Security appeal that the Commissioner's decision to deny her supplemental security income under the Social Security Act (the "Act") is contrary to law and not supported by substantial evidence. For the reasons explained below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff applied for benefits in February, 2012, alleging disability due to fibromyalgia, anxiety, bipolar disorder, post-traumatic stress disorder, asthma, fatigue, club feet, arthritis, anemia, fear of bridges over water, gastroesophageal reflux disease, pinched discs in her back, and neurological damage to her legs and feet. Plaintiff's application was denied initially and on reconsideration. Plaintiff appealed the denial to an administrative law judge ("ALJ"). After an administrative hearing, the ALJ issued an unfavorable decision on March 10, 2014. (Tr. 10-38.)

In her decision, the ALJ evaluated Plaintiff's claim using the "five-step" sequential analysis prescribed by the Social Security Regulations.[1] *See* 20 C.F.R. §§ 404.1520 and

---

[1] The Social Security Administration uses a five-step process to determine whether a claimant is disabled.

At the first step, the claimant must establish that he has not

[416.920](#). In doing so, the ALJ found that Plaintiff has the severe impairments of status post gastric bypass, bipolar disorder, oppositional defiance disorder, PTSD, history of club foot deformity repairs, history of fibromyalgia, and left arm tendinitis. (Tr. 16.) The ALJ found that Plaintiff has the residual functional capacity ("RFC")[2] to lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit four hours in an eight-hour workday, and stand and walk four hours in an eight-hour workday. (Tr. 18.) Plaintiff can occasionally climb and must alternate sitting and standing ever thirty minutes. (*Id*.) She can perform simple instructions that are repetitive and routine and do not involve multitasking and she must have only brief, superficial interaction with the public, coworkers, and supervisors. (*Id*.) The ALJ stated that although Plaintiff could not perform her past relevant work, there are jobs in the national economy that Plaintiff is able to perform. (Tr. 30-31.) Therefore, the ALJ concluded that Plaintiff was not entitled to benefits.

Plaintiff requested review of the ALJ's decision by the Appeals Council of the Social Security Administration ("Appeals Council"). The Appeals Council denied review, making

---

> engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

[2] RFC, or "residual functional capacity," is what the claimant is able to do despite limitations caused by all of the claimant's impairments. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).
.

the ALJ's decision the final decision of the Commissioner of Social Security.

On appeal, Plaintiff contends that the ALJ's RFC assessment is inconsistent with the ALJ's own findings and unsupported by the evidence. Plaintiff also claims that the hypothetical question posed to the vocational expert was improper and does not constitute reliable, substantial evidence. The Court will consider each of these arguments below.

## ANALYSIS

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001) (quotation omitted). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* at 960-61. Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence exists for a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

Plaintiff argues that the ALJ did a poor job evaluating the medical evidence. Plaintiff maintains that the ALJ improperly weighed the medical evidence by discounting the opinions of examining providers and, instead, relying on the opinions of non-treating experts to formulate Plaintiff's RFC. According to Plaintiff, the ALJ "cherry-picked" the record by pulling out clinical entries unfavorable to Plaintiff, while ignoring those supporting Plaintiff's claim of disability. Plaintiff claims that the RFC assessment does not adequately address Plaintiff's limited ability to deal with stress, interact with co-workers, perform at pace, accept instructions, maintain regular attendance, or avoid uncontrolled crying spells. Plaintiff further asserts that the RFC does not address Plaintiff's need for frequent and unscheduled rests or the three absences per month that three treating sources predicted. Plaintiff claims that the RFC finding is also inconsistent with the low Global Assessment of Functioning ("GAF") scores noted by two treating physicians.

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence." *Medhaug v. Astrue,* 578 F.3d 805, 815 (8th Cir. 2009) (quotation omitted). However, a treating physician's opinion "does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Heino v. Astrue,* 578 F.3d 873, 880 (8th Cir. 2009). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id*. (quotation omitted).

An ALJ may not, however, cherry-pick inconsistencies between a treating physician's opinion and the record to discount the physician's opinion. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Id*. Still, "an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion." *Id*.

The evidence does not support Plaintiff's contention that the ALJ "cherry-picked" the record, or improperly discounted medical opinions. The ALJ addressed the limitations alleged by Plaintiff, but simply did not assign as much significance to those limitations as Plaintiff would have liked. For instance, Plaintiff points to the opinion of consultative psychologist Dr. A. James Fix as an example of medical evidence ignored by the ALJ. However, the ALJ's opinion discusses Dr. Fix's diagnosis, as well as the GAF score assessed by Dr. Fix. (Tr. 21, 379.) Although the ALJ did not attribute much weight to Dr. Fix's GAF assessment, this was not improper. *See Jones v. Astrue,* 619 F.3d 963, 973 (8th Cir. 2010) ("[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it.") (quotation omitted). Although Plaintiff claims that the ALJ rejected Dr. Fix's opinion that Plaintiff would not be able to relate appropriately with co-workers, the ALJ did, in fact, incorporate this restriction in Plaintiff's RFC. (Tr. 18.)

Similarly, the ALJ properly evaluated the opinion of Plaintiff's psychologist, Dr. Nathan Sudbeck. Dr. Sudbeck opined that Plaintiff's emotional dysfunction limited her ability to acquire and maintain employment. (Tr. 27, 578.) Dr. Sudbeck also opined that Plaintiff would perform unskilled work tasks at a slower pace than unimpaired workers. (Tr. 28, 585.) The ALJ provided numerous reasons for discounting Dr. Sudbeck's opinion. For instance, in December, 2012, Plaintiff told Dr. Sudbeck things were going well. (Tr. 28,

4

605.) At that time, Plaintiff explained that she participated in a holiday celebration and had an improved level of depression. (*Id*.) At her next appointment, Plaintiff brought her baby and expressed that she was motivated by being a positive parent. (Tr. 28, 606.) In June, 2013, Plaintiff reported depression, but stated she was functioning well and able to stay active to care for her daughter. (Tr. 28, 626.) In August 2013, Plaintiff was unhappy, but planning to attend a concert. (Tr. 28, 635.) In September, 2013, Dr. Sudbeck noted that Plaintiff was friendly, talkative, and functioning relatively well. (Tr. 28, 636.) There is no evidence that the ALJ cherry-picked Dr. Sudbeck's records, as the ALJ also pointed to evidence supporting Plaintiff's claimed limitations, including Plaintiff's report to Dr. Sudbeck that she was having increased depression in August, 2013. (Tr. 28, 635.)

The ALJ also considered the opinion of Josalynn Swan, PA-C, who treated Plaintiff for her physical impairments. Ms. Swan opined that Plaintiff would likely be absent from work three or more days per month, and that Plaintiff's pain, fatigue, or nausea would compromise her ability to maintain sustained concentration for simple tasks for three or more days per month. (Tr. 26, 591-92.) In evaluating Ms. Swan's opinion, the ALJ considered the inconsistencies between it and Plaintiff's daily activities, which included living alone, taking care of a small child, going to the grocery store, doing laundry, attending church, and handling her own money. (Tr. 222.) The ALJ also found that Ms. Swan's treatment notes were inconsistent with her opinion. For instance, in January, 2013, Ms. Swan's notes reflect that Plaintiff was not anxious, her affect was normal, and her memory was intact. (Tr. 22, 651.) At that time, Plaintiff reported that a splint for her wrist worked well. (Tr. 650.) Moreover, in September 2013, Plaintiff told Ms. Swan that recent weather changes had caused muscle aches, but her fibromyalgia had been well controlled and a B12 shot made a big difference for her. (Tr. 22, 673.) In short, the ALJ did not improperly find that the evidence does not support Ms. Swan's opinion as to Plaintiff's limitations.

The same is true with respect to the opinions held by Dr. Imad Alsakof and Barbara Thaler, ARNP. Ms. Thaler completed a mental RFC questionnaire in 2014, which was then signed by Dr. Alsakap. (Tr. 563-69.) Ms. Thaler opined that Plaintiff had a marked limitation in the ability to deal with work stress and that she had an extreme limitation in the ability to complete a normal workday. (Tr. 563-65.) The ALJ assigned little weight to this opinion, however, asserting that it was inconsistent with Ms. Thaler's treatment notes and

5

the overall record. (Tr. 29.) The ALJ pointed out that in April, 2013, Plaintiff reported that her medications were working. (Tr. 29, 611, 619.) Ms. Thaler also noted in her records that Plaintiff's mood swings had stabilized. (Tr. 29, 619.) Although Plaintiff reported weekly panic attacks in September 2013, by the next month she reported that medication had helped. (Tr. 29, 637-38, 717.)

The Court concludes that the ALJ properly weighed the evidence of record. The Court further finds that there is no indication that the ALJ ignored evidence in assessing Plaintiff's RFC. Therefore, the Court rejects Plaintiff's arguments relating to the ALJ's evaluation of medical evidence.

Plaintiff also claims the ALJ erred in relying upon the opinions of non-treating experts. Plaintiff argues that these experts did not have access to all treating source opinions or certain medical records. The Court is not persuaded by this argument. The mere fact that additional evidence became available after these medical experts issued their opinions does not automatically render them unreliable. *See Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). The ALJ considered all the record evidence in assessing Plaintiff's RFC, including evidence submitted after the state agency medical experts issued their opinions.

Plaintiff also contends that because the hypothetical question posed to the vocational expert failed to fully describe Plaintiff's impairments, the expert's testimony on Plaintiff's ability to work does not constitute substantial evidence to support a finding of no disability. "A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). The hypothetical adequately reflected the impairments that were consistent with the record as a whole. Therefore, the ALJ properly relied on the vocational expert's testimony in concluding that Plaintiff was not disabled.

6

## CONCLUSION

For the reasons stated, and after careful consideration of each argument presented in Plaintiff's brief, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

**IT IS ORDERED** that judgment shall be entered by separate document providing that the decision of the Commissioner is affirmed.

**DATED February 16, 2016.**

**BY THE COURT:**

**S/ F.A. Gossett**
**United States Magistrate Judge**